214 So.2d 525 (1968)
COUNTY OF PINELLAS, Florida, Appellant,
v.
CLEARWATER FEDERAL SAVINGS AND LOAN ASSOCIATION, a Corporation Organized and Existing under the Laws of the United States; Joe Louis Jones and Ida Bell Jones, His Wife, Appellees.
Nos. 67-507, 68-54.
District Court of Appeal of Florida. Second District.
October 4, 1968.
Page S. Jackson, County Atty., and Ronald H. Schnell, Asst. County Atty., Clearwater, for appellant.
John D. Fite, of Richards, Nodine, Gilkey & Fite, Clearwater, for appellee Clearwater Fed. Sav. & Loan Ass'n.
*526 PIERCE, Judge.
These two cases arose from the same fact situation and involve the same parties and, therefore, have been consolidated for purposes of appeal. However, each will be discussed separately.
Appellees, Joe Louis Jones and Ida Bell Jones, his wife, were named defendants below and are appellees by virtue of their failure or refusal to join in this appeal.
Case No. 67-507 is an appeal by the County of Pinellas, defendant below, from an Order granting summary judgment and from a summary judgment of foreclosure rendered in favor of plaintiff, Clearwater Federal Savings and Loan Association. Plaintiff and defendant County will be referred to as "Association" and "County" respectively.
Joe and Ida Bell Jones received welfare assistance from the County from August 25, 1960. On July 5, 1963, Joe and Ida Bell signed a Welfare Lien in favor of County, which lien was recorded in the public records on August 15, 1963. Meanwhile on August 8, 1963, Joe and Ida Bell became the record title owners of the realty which is the subject of the instant appeal, taking said property subject to, and by assuming, a mortgage on the property held by the Association.
Subsequently, Joe and Ida defaulted, and on January 12, 1965, the Association brought suit to foreclose, joining County as a defendant. A decree of foreclosure was entered in favor of Association, which purchased the property at foreclosure sale.
Joe and Ida continued living on the property and paying rental thereon until, on June 24, 1966, the Association reconveyed the subject property to the Joneses, taking back and recording a purchase money mortgage. The Joneses again defaulted.
On May 22, 1967, Association filed its complaint seeking foreclosure against Joe and Ida Bell, and joining County as a party. Joe and Ida did not answer and default was entered against them. County answered and counterclaimed. Association filed its motion for summary judgment.
The lower Court granted Association's motion for summary judgment, ruling that County's lien was inferior and subordinate to Association's. The Court then entered its summary judgment of foreclosure. The Clerk of the Circuit Court was ordered to sell the subject property at public sale on November 21, 1967. This appeal ensued.
County assigns as error the granting of Association's motion for summary judgment and entry of final summary judgment of foreclosure for the alleged reason that County's lien is superior to Association's purchase money mortgage. As will appear, we cannot agree with County's theory.
The law relating to the superiority of purchase money mortgages is well settled. Purchase money mortgages generally take priority over any other prior or subsequent claims or liens attaching to the property through the mortgagor. Purchase money mortgages are recognized as being senior to claims of dower and homestead as well as to judgment liens and mortgages on after-acquired property. 59 C.J.S. Mortgages § 231; 36 Am.Jur., Mortgages § 230; G. Osborne, Mortgages p. 555 (1951); G. Glenn, Mortgages § 345.1 (1943); R. Boyer, Florida Real Estate Transactions § 32.04 (1968).
Thus it is obvious that whether County's claim is denominated a lien and deemed analogous to a judgment lien, or a mortgage of after-acquired property, is immaterial insofar as application of the rule is concerned. The trial Judge has ably elucidated the rationale underlying the rule giving precedence to purchase money mortgages and it will not be repeated here.
County does not appear to contest the validity of the general rule but seems to contend that the special circumstances of this case should result in an exception to it. The "special circumstances" upon which County relies is the reacquisition by *527 the Joneses of the identical parcel which had been previously foreclosed. County's arguments are premised upon the last two paragraphs of its answer:
"3. That although the Final Decree in Chancery No. 76427 [first foreclosure] and the sale of the subject property pursuant thereto appeared to extinguish Pinellas County's lien on the subject property, the subsequent reacquisition of the property by JOE LOUIS JONES and IDA BELL JONES as set out above has caused Pinellas County's lien to remain upon subject property notwithstanding said Final Decree and sale.

"4. That Pinellas County's lien having remained upon subject property, said lien is superior to the lien of the Plaintiff herein." (Emphasis supplied.)
It is noted in passing that were we to accept County's theory the result would be the same, for Association's purchase money mortgage would still prevail. To let the matter rest there, however, would be to possibly wreak havoc upon a long established and essential body of law.
It is elementary that a mortgage is a lien upon specific property, real or personal. A judgment lien, analogous to County's welfare lien, is a general lien which attaches to any property currently owned or subsequently acquired by the judgment debtor. If a mortgagor suffers foreclosure of a first mortgage on property which is also subject to a second mortgage, the second mortgage is extinguished and the second mortgagee is left "holding the bag". Subsequent acquisition of one or many other parcels of property does not inure to the benefit of the second mortgagee.
The same is not true of judgment liens. When a mortgagor suffers a foreclosure on property to which a judgment lien is attached, the lien is extinguished only as to that property and persists as an outstanding claim against the judgment debtor. The lien is nullified as an encumbrance on the foreclosed property, but as to the debtor, the lien is dormant only and is ready to spring to life the moment of acquisition or reacquisition of property to which it can attach.
The reacquisition of the subject property is not determinative of anything except Association's willingness to give the Joneses a second chance. The effect is the same whether conveyance was from Association or some other grantor or whether the identical or a distinct parcel was conveyed.
County's reliance on Torreyson v. Dutton, 137 Fla. 683, 188 So. 805, 190 So. 430 (1939) and Lafferty v. Detwiler, 155 Fla. 95, 20 So.2d 338 (1944) is not well founded, for they are not on point. In the foregoing cases there was found fraudulent intent on the part of the mortgagor to abrogate legitimate claims and unjustly enrich himself. The decisions were premised on the equitable maxim that one may not profit by his own wrongdoing. The lower Court found as a fact that no fraud existed in the instant case; hence, the salutary, but narrowly to be construed, rule followed in the cited cases does not apply.
County attempts to find additional support for its position in the trial Judge's use of the word "revived". The word was quite accurately used, when viewed in proper perspective. As was demonstrated above, the lien was dormant as to the Joneses and upon the reconveyance it "revived". The lien was "extinguished" as to the subject property and the reconveyance caused it to attach with the same force and effect as it would have attached to any other realty acquired by the Joneses. Such lien simply was still subordinate to Association's purchase money mortgage.
In the lower Court order granting Association's motion for summary judgment, the able Judge has stated the facts, delineated the issues, lucidly explicated, and correctly applied the existing rules of law pertaining to priorities between purchase money *528 mortgages and liens. We herewith adopt said order as part of this opinion:
"The opposing contentions of the movant, Clearwater Federal Savings and Loan Association, and of the County of Pinellas, may be disposed of as a matter of law, there being no disputed issues of ultimate material fact. The property sought to be foreclosed on was the subject of a prior foreclosure action between the same parties. The original foreclosure action was styled Chancery No. 76,427 in this Court and was filed on or about January 12, 1965, naming as defendants the same parties-defendant recited herein; that by decree of foreclosure entered in the aforementioned cause the rights and title of defendants Jones were merged in plaintiff who purchased at the sale and the Welfare Lien of the County, being junior to plaintiff's lien, was then extinguished as to the subject property.
"Subsequent to foreclosure sale and the property being deeded to plaintiff, plaintiff reconveyed the property to Jones and took back a purchase money mortgage, which is the subject of the present foreclosure.
"The Joneses have not defended the present action. The County contends, however, that under Florida law when the property was reconveyed to Jones after the first foreclosure, this revived and made viable its Welfare Lien and that this lien, being prior in time to plaintiff's purchase money mortgage which it now seeks to foreclose, is paramount to and takes precedence over plaintiff's purchase money mortgage.
"Plaintiff argues that no revival occurred at all, but even if it did and the County's lien was revived as a matter of law, that plaintiff's purchase money mortgage is paramount to the County's Welfare Lien.
"It is clear, under the authorities cited, that where a mortgage foreclosure is tainted with fraud which results in impairment of a junior lien, the junior lien will revive in case of subsequent merger in the mortgagor by a fee simple title to the land foreclosed. We do not, however, find, nor is it even contended, that when plaintiff reconveyed the property to the Joneses it did so with fraudulent intent to deprive the County of its lien, and the Court is satisfied that there was no constructive fraud present in the transaction.
"The Court has carefully considered the authorities cited by counsel for the respective parties and concludes as a matter of law, from the reading of same, that the County's Welfare Lien did not revive when plaintiff Bank reconveyed the property sought to be foreclosed to defendants Jones. Cheves vs. First National Bank of Gainesville [79 Fla. 34], 83 So. 870; Richardson Tractor Company vs. Square Deal Machinery and Supply Company [Fla.App.], 149 So. (2nd) 388. The Court is equally persuaded, and so finds, that the revival of the County's lien does not increment it into a position or status better than its original one. It is a fundamental principle of law, albeit arrived at by some sort of legal legerdemain, that where a purchase money mortgage is taken back in consideration of a conveyance to a grantee, the purchase money mortgage, or the rights thereto, become vested before or in the exact point of time as the grantee acquires title and that subsequently the rights of the purchase money mortgage holder stand as a buffer between the interest of the grantee in the land and other lien holders, even though the other liens are senior in time of acquisition. Cheves vs. First National Bank of Gainesville, supra; Van Eepoel Real Estate Co. vs. Sarasota Milk Co. [100 Fla. 434], 120 So. 841 [100 Fla. 438], 129 So. 892; and Porter vs. Teate, 17 Fla. 813. This legal fiction has been promulgated by the law for the logical and commendable reason that it is only through the *529 contribution of the purchase money mortgagor [sic] that the security ever came into being, and by granting to the purchase money mortgagor [sic] priority other lienors are in no wise damaged or injured or detrimented, for as was stated if it were not for the willingness of the purchase money mortgagor [sic] to convey to the grantee, nothing would exist to which the other liens could attach even in a subordinate position.
"This principle derives its virtue from the policy that it encourages commercial and real estate transactions generally and provides a lien debtor the opportunity to continue making transactions requiring the giving back of mortgages when otherwise he would be prohibited from doing so for the reason that no owner of property would sell with the knowledge that the property conveyed to the grantee would be subject to paramount claims over and above his.
"In summary, therefore, the Count finds and rules that the County's Welfare Lien did revive when the subject property was reconveyed to defendants Jones, but that said Welfare Lien is inferior and subordinate to plaintiff's purchase money mortgage."
The order and judgment appealed must be affirmed.
Case No. 68-54 is an interlocutory appeal from a post-decretal order directing the Clerk of the Circuit Court to accept and file the certificate of title to the Association.
Pursuant to order contained in the summary judgment, public sale of the subject property was held. Association was high bidder. Subsequently County filed its Notice of Appeal.
Although County filed no objections to the sale within the time provided, the Clerk refused to issue to Association a certificate of title. From the lower Court's order directing the Clerk to thereupon issue said certificate, County has taken this interlocutory appeal.
County contends that the lower Court was without jurisdiction to enter such order during the pendency of its appeal.
The lower Court found inter alia that issuance of certificate of title "* * * is a mere ministerial function required by statutory law [Florida Statutes § 702.02] and that statutory procedures and ministerial functions were not superseded by the appeal filed by County * * *". We agree.
The orders appealed are affirmed.
LILES, C.J., and MANN, J., concur.